UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAL REALTY, LLC; and
RAEDEN ACQUISITIONS, LLC,

Plaintiffs,

v.

CITY OF GIBRALTAR,

Defendants. /

Case No.

Hon.

# COMPLAINT

Plaintiffs CAL Realty, LLC ("CAL Realty"), by its attorneys Honigman, LLP, and Raeden Acquisitions, LLC ("Raeden"), by its attorneys, Bodman PLC, for their Complaint against the City of Gibraltar ("Defendant" or the "City"), state as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs wish to repurpose the former McLouth steel mill site in the City currently operating as a steel processing plant into a technical data center – a data center that will generate the bulk of its own power, use a closed-loop system for cooling its data processing, and otherwise impose far less impact upon the City or its neighbors than the site's prior industrial uses. Although the data center is permitted by right under the City's zoning ordinances, the City has refused to consider Plaintiffs' site plan and has gone so far as to pass an unlawful moratorium in an attempt to circumvent the City's duty to approve Plaintiffs' site plan. The

City's actions and failures to act are contrary to law and deprive Plaintiffs of their rights. This Court should declare these actions unlawful, require approval of Plaintiffs' site plan, and award Plaintiffs their damages.

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff CAL Realty owns the industrial property located at 27800 West Jefferson Avenue in the City of Gibraltar, Michigan, 48173 (the "Property").

3. CAL Realty is a limited liability company organized under the laws of the state of Ohio with its principal place of business in Brooklyn, Ohio and is the fee owner of the Property.

4. Raeden has entered into a purchase agreement ("Purchase Agreement") with CAL Realty, whereby upon zoning approvals and the satisfaction of other conditions Raeden will become the owner of the property and has proposed to develop it as a data center. Raeden has acted as CAL Realty's authorized representative for the submission of a site plan application to reuse the existing industrial facility on the Property as a modern data center (the "Application").

5. Raeden is a limited liability company organized under the laws of the state of Delaware with its principal place of business in Dover, Delaware.

6. Defendant City of Gibraltar is a Michigan municipal corporation located in Wayne County, Michigan. The City Council, Planning Commission, City

Administrator, planning consultant, zoning officials, and other departments and agents relevant to the Application act on behalf of the City.

7. This Court has subject matter jurisdiction over Plaintiffs' federal constitutional claims pursuant to 28 U.S.C. § 1331 because they arise under the United States Constitution and 42 U.S.C. § 1983.

8. The Court also has supplemental subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts as the federal claims.

9. Venue is proper in this District under 28 U.S.C. § 1391 because the City of Gibraltar is located in this District and a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### *The Property and Proposed Adaptive Reuse*

10. The Property is commonly known as 27800 West Jefferson Avenue, Gibraltar, Michigan, and consists of approximately 42.34 acres.

11. The Property is improved with substantial pre-existing industrial manufacturing buildings, related paved areas, utility infrastructure, and other improvements that have long been used and devoted to intensive industrial use, including steel processing.

12. The Property is zoned M-2, Medium Industrial.

13. “The M-2 district is designed to accommodate industrial uses engaged in the basic processing and manufacturing of materials or products predominately from extracted or raw materials, or a use engaged in storage or manufacturing processes that potentially involve hazardous materials or commonly recognized offensive conditions.” Gibraltar Ordinances, Part II § 44-780.

14. The M-2 District expressly permits by right all uses allowed in the M-1, Light Manufacturing district which include:

a. “Uses of a light industrial nature using light machinery and conducted entirely within an enclosed, substantially constructed building, provided the front yard area around such building is used only for landscaping and the parking of cars and with loading and unloading operations in the rear.”

b. “Research and development facilities, technical centers and laboratories, and any use charged with the principal function of basic research, design and pilot or experimental product development.”

c. And “Upon the determination of the planning commission, other uses similar to the above uses.”

15. The M-1 District notes that its intent and purpose include to “support economic development and job creation, technology and research facilities are also desired to [be] located within the district.”

16. The M-2 District also expressly permits “electric power generating plants.”

17. The proposed project will adaptively reuse the existing industrial buildings and related land as a technical data center capable of supporting high-performance computing and associated services.

18. The project includes ground-level service yard areas for cooling and power equipment, an onsite utility-grade electrical substation, and other infrastructure customary for an industrial data center facility.

19. The proposed cooling system is closed-loop and air-cooled, requires no regular makeup water for industrial cooling, and generates no industrial cooling wastewater.

20. At full operation, the facility is expected to require skilled staff on a continuous basis, including facility engineering, operations, security, network, and technical personnel.

21. The project is materially less intensive in several respects than the existing heavy-industrial manufacturing use and will rehabilitate an existing industrial property rather than consume undeveloped land.

22. There is environmental contamination present on the Property as a result of its historical industrial use, and the Property is directly adjacent to a site listed on the federal National Priorities List ("NPL") under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq*. (commonly known as CERCLA or Superfund).

23. The Property's environmental condition limits its redevelopment potential. Redeveloping the Property as a technical data center will productively reuse a brownfield site, consistent with public policy. See, e.g., Executive Order 14318, Accelerating Federal Permitting of Data Center Infrastructure, issued July 23, 2025, available at: https://www.whitehouse.gov/presidential-actions/2025/07/accelerating-federal-permitting-of-data-center-infrastructure/.

24. The proposed reuse of the industrial facility as a technical data center is permitted by right in the M-2 district.

25. A data center is a "technical center" within the meaning of the Gibraltar Zoning ordinance and is therefore permitted by right in both M-1 and M-2 zoning districts.

26. The proposed use as a technical data center also qualifies as a use of a light industrial nature using light machinery and conducted entirely within an enclosed, substantially constructed building and is therefore permitted by right in both M-1 and M-2 zoning districts.

27. Under the City's zoning ordinance, the proposed data-center use falls within the uses permitted by right in the M-2 district.

28. No rezoning is required.

29. No variance is required.

30. No special land use approval is required.

31. Indeed, under a strict reading of the City Ordinance, a site plan is not required for uses that are permitted by right, including the proposed data-center use.

32. Instead, under Sections 44-950, 951 of the Ordinance, Plaintiffs' project only requires a building permit and use permit to move forward.

33. However, during early talks with the City, Plaintiffs were directed by the City that they must submit a site plan so that the City, through its Planning Commission, could determine whether the words "technical center" applied to a data center use.

34. Plaintiffs complied with the City's instructions, and on February 17, 2026, Raeden submitted a site plan as part of the Application for the proposed data center.

35. The City's authority, if a site plan is required at all, is limited to the Planning Commission reviewing whether the Application contains the required information and complies with the objective site-plan standards in the ordinance and other applicable law.

36. Under the Michigan Zoning Enabling Act ("MZEA"), any decision rejecting, approving, or conditionally approving a site plan must be based on requirements and standards contained in the zoning ordinance, properly adopted planning documents, other applicable ordinances, and state and federal statutes. MCL 125.3501(4).

37. Under the MZEA, a site plan "shall be approved" if it contains the information required by the zoning ordinance and complies with applicable requirements. MCL 125.3501(5).

***Plaintiffs Submitted the Application Before the Moratorium***

38. In early January 2026, Plaintiffs requested that the City verify that use of the Property as a data center would be permitted by right under the Property's zoning classification.

39. The City directed Plaintiffs' inquiry to the City's Planner, McKenna. On January 13, 2026, McKenna told Plaintiffs: "The data center use may be permitted by right, the information I provided in the zoning response was intended to indicate that it would be up to the Planning Commission to establish a data center is a similar use to any of the permitted uses as listed in the Zoning Ordinance for M-2, which may very well be a 'Technical Center.' It is not my role to make that determination as stated by the Zoning Ordinance 44-781[(2)](k)."

40. On February 17, 2026, Plaintiffs submitted the Application to the City.

41. The Application sought approval to adaptively reuse the existing industrial property and buildings as a technical data center.

42. The Application included a site plan and narrative materials addressing intended use, staffing, cooling, fire protection, traffic, environmental impacts, lighting, utilities, and related site features.

43. On March 2, 2026, the City issued a letter identifying additional information it requested before completing zoning-compliance review.

44. The March 2 letter did not deny the Application and did not identify any basis to conclude that the proposed use was prohibited.

45. Instead, the City requested additional dimensions, topographic and wetland mapping, photometric information, screening details, soils information, fire-lane and circulation information, landscaping information, equipment-yard dimensions, and related details, none of which are required under the current zoning ordinance.

46. Nonetheless, Plaintiffs undertook substantial additional engineering and professional work to respond to those requests.

47. Also on March 2, 2026, McKenna advised Plaintiffs that the March 2 Letter "is not a site plan review for zoning compliance; this is currently in progress. This letter only highlights the information we will need for a full review of the zoning compliance. I will share the results of our initial site plan review when that is complete to ensure your awareness of any issues of noncompliance at this time."

48. Plaintiffs undertook substantial additional engineering and professional work in reliance on the City's representation that it had commenced and would complete its site plan review.

49. To date, the City has not completed its site plan review.

***The City Enacted a Targeted Moratorium While the Application Was Pending***

50. Plaintiffs undertook substantial efforts to educate the public and elected officials regarding the proposed data center reuse, including by meeting with elected officials and City staff to address questions and concerns, preparing written materials that the City could post on its website, making public presentations, and even conducting a site visit for City Councilmembers to an operational data center in Grand Rapids.

51. One such public presentation occurred at the March 9, 2026 City Council meeting. Raeden's President appeared before City Council and its residents to address and alleviate concerns over the project.

52. Despite Plaintiffs' efforts, at the March 9 meeting, the City Council adopted a one-year moratorium concerning data centers (the "Moratorium").

53. Significantly, the Moratorium begins by acknowledging that a data center is a use permitted by right under the City's existing Ordinances: "the City currently has (research [sic] and development facilities, technical centers and laboratories listed as a use permitted by right in Article XXI – Light Manufacturing Districts or (M-2) of its Zoning Ordinances, but has yet to establish approve, and implement **additional** standards specific for data centers" (emphasis added).

54. By its terms, the Moratorium is a "blanket prohibition on the establishment and use of data centers."

55. The Moratorium applies to the "establishing, permitting, consideration, approval, location, construction, and/or installation" of data centers in the City.

56. The Moratorium purports to apply immediately to pending projects, including Plaintiffs' Application.

57. The City enacted the Moratorium after receiving Plaintiffs' Application and after beginning its zoning/site-plan review.

58. The timing, text, and surrounding circumstances establish that the Moratorium was adopted specifically to suspend or defeat review of Plaintiffs' pending Application.

59. Other than Plaintiffs' Application, there was no other proposal for a data center use pending at the time the Moratorium was adopted.

60. The Moratorium was adopted as a resolution.

61. Under the City Charter Section 7.2, action by resolution must be limited to matters required or permitted to be so done by the Charter or by state or federal law or pertaining to the internal affairs or concerns of the city government.

62. The Moratorium purports to amend the zoning ordinance by adopting new procedures for site plan approval that are not found in the Gibraltar Ordinances.

63. The Moratorium purports to amend the zoning ordinance by prohibiting the "establishment and use" of data centers within the City, thereby designating that no zoning district is appropriate for such use.

64. There is nothing in the City's Charter that requires or permits zoning ordinance amendment by resolution.

65. There is no state or federal law that requires or permits the City to amend a zoning ordinance by resolution.

66. The Moratorium does not strictly pertain to internal affairs or concerns of the City.

67. Indeed, unless the City is itself establishing a data center, the Moratorium applies strictly to external affairs of private citizens and businesses.

68. Thus, the City exceeded its power as granted within its own charter and the resolution is invalid and unenforceable.

69. Instead, the City is attempting to amend its zoning ordinances via resolution.

70. There is no Gibraltar Ordinance that requires any site plan approval for a data center in the M-2 district.

71. There is no Gibraltar Ordinance that requires a delay until March 9, 2027 in making data center determinations, including permitting, consideration, approval, construction and/or installation.

72. To the contrary, by way of example, Part II § 44-952 of the Gibraltar Ordinance requires that upon submission of a conforming application, "it shall be

the duty of the building inspector to issue a permit **within ten days** after the receipt of such application."

73. Thus, the Moratorium's twelve-month delay on permitting and approval is in direct contravention of the City Ordinance.

74. If an action is inherently legislative, its enactment must itself be legislative.

75. A legislative ordinance cannot be amended, repealed, or suspended by another act of less dignity than the ordinance itself.

76. Even if the Moratorium were a legitimate resolution, it cannot supersede an ordinance.

77. The Moratorium is not an ordinance.

78. The MZEA permits a local unit of government to regulate land development and the establishment of zoning districts within which land uses may be regulated *only* by zoning ordinance. *See* MCL 125.3201.

79. The Moratorium did not follow the procedure, notice, hearing, and publishing requirements under the MZEA to have the effect of an ordinance. *See* MCL 125.3401.

80. The Moratorium did not follow the procedure, notice, hearing, and publishing requirements under the MZEA to have the effect of an interim zoning ordinance. *See* MCL 125.3404.

81. As the City conceded in the Moratorium, the City had no standards specific to data centers in its zoning ordinance when Plaintiffs submitted the Application.

82. On March 23, 2026, the City Council engaged its planning consultant to draft a new data center zoning ordinance.

83. Because the Moratorium is not an ordinance, and no data center ordinance was enacted prior to submission of the Application, neither the Moratorium nor any future data center zoning ordinance controls the Application.

84. The City may prospectively study and adopt lawful zoning ordinances, but it may not use a post-application moratorium to nullify Plaintiffs' right to review under the ordinance that governed when the Application was submitted.

85. The Moratorium is not a neutral, administrative internal scheduling measure. By its terms and as applied, it is a blanket prohibition on consideration and approval of a data center land use, regardless of whether the Application complies with every existing objective standard.

86. The Moratorium's waiver provision is unlawful for two reasons: 1) it was enacted part and parcel to the unlawful moratorium; and 2) because there is no provision in the existing zoning ordinance that requires an applicant to undertake an additional procedural step to request a waiver before its application for a by-right land use is reviewed and approved.

***Plaintiffs Supplied the Requested Materials and Demanded Review***

87. On March 31, 2026 the City published a "Frequently Asked Questions: Raeden Data Center Proposal" document ("FAQ").

88. The FAQ posed the question: "What is the zoning of the property, and does it allow data centers?"

89. The City's answer, with emphasis supplied by the City was:

> The property is currently zoned M-2, Medium Industrial. The City of Gibraltar code of ordinance Sec. 44-781 outlines that uses permitted include those uses allowed in the M-1 light manufacturing district as permitted and regulated under Sec. 44-700. Sec. 44-700 permits the use of *Research and development* facilities, **technical *centers*** *and laboratories, and any use charged with the principal function of basic research, design and pilot or experimental product development.*

90. Despite the City's public acknowledgment that data centers are a permitted use in M-1 and M-2 zoning districts, the City still refused to process the Application.

91. Plaintiffs continued to invest substantial resources to address every issue identified by the City.

92. On May 27, 2026, Plaintiffs delivered another updated site-plan package to the City, as well as a detailed written response to the City's March 2 completeness comments.

93. The May 27 materials explained, item by item, how the revised plans addressed each completeness comment in the March 2 review letter and supplied the

requested information, including parcel acreage, additional dimensions, topographic data, wetland mapping, a photometric plan, dumpster screening, soils information, loading-area dimensions, fire-truck circulation, traffic-control markings, pedestrian routes, equipment-yard dimensions, landscaping, and other details.

94. The revised materials specified, among other items, a 14-foot chiller-yard equipment height with 15-foot screening, generator-yard details, fire-truck circulation, and additional landscape plans and schedules.

95. The May 27 materials further stated that Plaintiffs believed the original February 17 submission was complete, noted that no further zoning compliance comments had been received, confirmed that the use was permitted by right in the M-2 district, and requested continued review without delay.

96. The City has not identified any remaining objective deficiency that prevents review.

97. The City has not scheduled the Application for consideration by the Planning Commission or other approving authority.

98. The City has not approved, conditionally approved, or denied the Application.

99. Instead, the City has invoked or relied on the Moratorium to refuse consideration altogether.

100. The City expressly stated in a July 1, 2026 letter that it would not process the Application until the conclusion of the Moratorium.

***The City's Refusal Causes Ongoing Harm***

101. Plaintiffs have a protected property interest in the possession, use, and development of the Property in accordance with existing zoning.

102. Plaintiffs also have a statutory right to a site-plan decision based on the objective standards authorized by MCL 125.3501 and the City's zoning ordinance.

103. The City's refusal to process the Application has caused CAL Realty a significant delay in the sale of the Property to Raeden which was expected to close months ago and puts the sale of the Property in jeopardy.

104. CAL Realty continues to incur carrying costs, professional fees including attorneys' fees, lost-opportunity damages, delay damages, loss of by-right use of the Property, and other economic injury.

105. The City's indefinite refusal to process the Application has caused Raeden significant delay in purchasing and developing the Property and prevents Raeden from obtaining building permits, financing, tenant and development commitments, and other approvals necessary to redevelop the Property.

106. Raeden continues to incur professional fees including attorneys' fees, lost-opportunity damages, delay damages, expected increased costs to materials and labor for development from rising prices, and other economic injury.

107. Because the City refuses to issue a final site-plan decision, Plaintiffs lack an adequate ordinary administrative appeal and is trapped in an indefinite procedural limbo created by the City.

108. Absent judicial relief, the City will continue to act contrary to Michigan law by failing to process and approve Plaintiffs' application and issue building permits.

**COUNT I**
**DUE PROCESS VIOLATION**

109. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

110. Plaintiff CAL Realty is the fee owner of the Property and has a vested property interest protected by the United States Constitution and the Constitution of the State of Michigan.

111. Plaintiff Raeden is party to the binding Purchase Agreement to purchase the Property and thus has a vested property interest protected by the United States Constitution and the Constitution of the State of Michigan.

112. The United States Constitution provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amend. XIV.

113. Plaintiffs have a constitutionally protected property interest in the use and development of the Property in accordance with its M-2 zoning classification.

114. Plaintiffs have a legitimate claim of entitlement to issuance of a building permit and use permit for a data center which is permitted by right in the M-2 district.

115. Plaintiffs have a legitimate claim of entitlement to site plan approval, if required under the ordinance, arising from MCL 125.3501(5), which creates a mandatory entitlement to site plan approval where the application complies with the ordinance.

116. The City deprived Plaintiffs of their protected property interests without due process of law.

117. The City failed to provide Plaintiffs with a meaningful opportunity to be heard because it has provided no basis for denial, nor identified any specific, objective, ordinance-based deficiency, nor made any decision or any finding of any sort related to Plaintiffs' Application.

118. The City's reliance on an improperly adopted moratorium renders any reliance on the Moratorium arbitrary, capricious, and irrational.

119. The City's failure to hold a hearing and make a decision on the Application is a de facto denial rendering the process constitutionally inadequate.

120. The City's failure to make a decision and in effect render a de facto denial was arbitrary, capricious, and irrational.

121. There is no rational relationship between the City's inaction and any legitimate governmental interest.

122. The City's conduct shocks the conscience: it deprived Plaintiffs of their right to use the Property for a lawful, by-right use despite full compliance with all Ordinance standards.

123. The City's failure to comply with its own Ordinance, and otherwise comply with law, was arbitrary and capricious and deprived Plaintiffs of their right to procedural and substantive due process under the United States Constitution.

124. In depriving Plaintiffs of their right to procedural and substantive due process, the City acted maliciously and willfully, with callous indifference to Plaintiffs' protected rights.

125. The City's actions have caused Plaintiffs to suffer irreparable harm, effectively depriving Plaintiffs of the right to engage in the development of the Property and threatening the economic prospects of Plaintiffs.

126. By reason of the foregoing, the City, under color of state law, deprived Plaintiffs of their property interests without procedural and substantive due process of law, in violation of the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983.

## COUNT II
## TAKINGS

127. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

128. The Fifth Amendment to the United States Constitution, as it applies to the states through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation. U.S. Const. amends. V, XIV.

129. A municipal body may effect a regulatory taking when its actions deny an owner all economically beneficial or productive use of property, or impose unreasonable burdens in light of the economic impact, the interference with investment-backed expectations, and the character of the governmental action.

130. A zoning ordinance as applied or on its face or other municipal actions may effect a taking of property through regulatory taking or inverse condemnation.

131. The City has systematically and intentionally taken measures against Plaintiffs to prevent the development of the Property in accordance with their rights, to the detriment of Plaintiffs and the general public interest in compliance with existing ordinances.

132. The City's actions, as detailed above, have gone beyond mere regulation and have effectuated a taking of Plaintiffs' protected property interests.

133. Plaintiffs have reasonable investment-backed expectations in developing the Property for its permitted use.

134. CAL Realty has a reasonable investment-backed expectation in the sale of the Property for its permitted use.

135. Raeden has a reasonable investment-backed expectation to acquire and develop the Property and operate a facility on the Property as a technical data center.

136. The City's calculated and intentional attempts to delay and block CAL Realty's sale of the Property and Raeden's development of the Property have been extraordinary and exceed any normally expected delays in the zoning approval process.

137. The actions taken by the City have had significant economic impact on Plaintiffs, which impact continues and grows.

138. The City's actions demonstrate that no data center could have been approved on the Property—regardless of compliance with Ordinance standards. The City's actions thus resulted in a categorical deprivation of Plaintiffs' vested right to the Property's permitted use.

139. The actions taken, as set forth above, are contrary to law.

140. By reason of the foregoing, the City, acting under color of state law, has taken Plaintiffs' property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983.

## COUNT III
## EQUAL PROTECTION VIOLATION

141. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

142. The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the laws. U.S. Const. amend. XIV. Equal protection requires that similarly situated persons be treated alike when the government acts.

143. The City's refusal to hear and decide the Application was arbitrary and invidious and violates Plaintiffs' rights to equal protection under the Fourteenth Amendment to the United States Constitution.

144. Plaintiffs were treated differently by the City from other similarly situated applicants seeking zoning approval, building permits, and/or use permits.

145. The City has heard, denied, or approved other applications that were presented to the Planning Commission.

146. The City has approved or denied building permits, and/or use permits for by right permitted uses without requiring site plan approval.

147. Plaintiffs could locate no other instance of the City refusing to make any decision at all on a site plan or the City requiring site plan approval for by-right permitted uses where no site plan requirements are stated in the ordinance.

148. The City intentionally and arbitrarily discriminated against Plaintiffs by requiring site plan approval for a by-right use, and by refusing to hear the Application despite its satisfaction of every applicable Ordinance standard, while hearing and deciding other site plans. The City enacted a moratorium and began drafting a new ordinance to create heightened standards specifically targeted at Plaintiffs' Application, a course of events not found to be directed at any other building permit, use permit, or site plan. This differential treatment lacks any rational basis, fails to advance a legitimate governmental interest, and reflects illegitimate animus toward Plaintiffs' proposed development.

149. By reason of the foregoing, the City, acting under color of state law, denied Plaintiffs the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983.

## COUNT IV
## VIOLATION OF MZEA

150. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

151. MCL 125.3501(1) provides that "[t]he local unit of government may require the submission and approval of a site plan before authorization of a land use or activity regulated by a zoning ordinance."

152. MCL 125.3501(4) mandates that "[a] decision rejecting, approving, or conditionally approving a site plan shall be based upon requirements and standards

contained in the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes."

153. MCL 125.3501(5) provides that "[a] site plan shall be approved if it contains the information required by the zoning ordinance and is in compliance with the conditions imposed under the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes."

154. Under the mandatory language of MCL 125.3501(5), Plaintiffs' site plan "shall be approved" because it was compliant. The City's failure to make any decision and thereby issue a de facto denial therefore violated state law.

155. The City did not base its indecision and de facto denial on "requirements and standards contained in the zoning ordinance" as required by MCL 125.3501(4).

156. The City's failure to act and de facto denial is therefore ultra vires, unsupported by competent, material, or substantial evidence, and contrary to the mandatory approval provisions of both the MZEA and the City's own Ordinance.

## COUNT V
## DECLARATORY JUDGMENT

157. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

158. "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of an interested party seeking such declaration, whether or not other relief is or could be sought." 28 U.S.C. § 2201(a); see also 28 U.S.C. § 2202.

159. An actual, justiciable controversy exists between Plaintiffs and the City concerning the lawfulness and constitutionality of the City's refusal to issue a decision on the Application resulting in a de facto denial of Plaintiffs' site plan.

160. A declaratory judgment is necessary and appropriate to resolve the parties' dispute concerning their respective legal rights and obligations.

161. Plaintiffs are entitled to a judicial declaration that:

a. The City cannot use a moratorium to supersede, suspend, or evade Michigan statutory duties as to an application submitted before the Moratorium, and therefore the Moratorium is invalid and unenforceable as applied to the Application;

b. The Moratorium's enactment was not procedurally proper and therefore the purported Moratorium has no legal effect;

c. As applied to the Application, the Moratorium is contrary to the MZEA, exceeds the City's delegated zoning authority, conflicts with the City's zoning ordinance, and is arbitrary and unreasonable;

d. Application of later-enacted data-center standards to the February 17, 2026 Application would also be unlawful, and therefore the Application is entitled to review under the Ordinances in effect at the time the Application was submitted;

e. The City's failure to act and de facto denial of Plaintiffs' Application violated Plaintiffs' rights to substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution;

f. The City's failure to act and de facto denial of Plaintiffs' Application violated Plaintiffs' rights to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution;

g. The City's failure to act and de facto denial of Plaintiffs' site plan constituted a taking without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

h. The City's failure to act and de facto denial of Plaintiffs' site plan violated Plaintiffs' rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution;

i. The City's failure to act and de facto denial of Plaintiffs' site plan violated the MZEA, including MCL 125.3501;

j. Plaintiffs' site plan satisfies all applicable requirements and standards of the City's Ordinance and the MZEA; and

k. Plaintiffs are entitled to approval of the site plan as a matter of law.

## COUNT VI
## SUPERINTENDING CONTROL/MANDAMUS

162. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

163. For the reasons set forth above, the City has deprived Plaintiffs of the rights protected by the United States Constitution under the color of law.

164. The City has refused to approve the Application.

165. The Application meets all of the City's ordinances in effect at the time of its submission and includes all the information required under the Ordinance.

166. Approval of the Application is ministerial and not discretionary if the request meets the standards cited in the Ordinance. Under the MZEA, a site plan "shall be approved if it complies with the requirements of the zoning ordinance. MCL 125.3501(5). This mandate grants a clear legal right to approval of the Application and imposes a clear legal duty on the City to approve a compliant site plan.

167. Plaintiffs do not have an available and adequate appeal remedy because the City has failed to act on the Application.

168. The City is subject to superintending control and mandamus by this Court.

169. Plaintiffs do not have another adequate legal remedy without the aid of an order of superintending control or mandamus. Money damages alone cannot remedy the ongoing deprivation of Plaintiffs' right to develop the Property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant City of Gibraltar, and grant the following relief:

A. Order the City to approve Plaintiffs' Application to develop the Property;

B. Order Declaratory Judgment in accordance with ¶ 161 of this Complaint;

C. Award Plaintiffs damages suffered as a consequence of the City's unlawful actions;

D. Exercise superintending control over the City and approve Plaintiffs' Application; and/or issue a writ of mandamus compelling the City to approve the site plan.

E. Award Plaintiffs its costs, including attorneys' fees, pursuant to 42 U.S.C. § 1988; and

F. Grant Plaintiffs such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

Dated: August 17, 2026

By: */s/ Michael P. Hindelang*
Michael P. Hindelang (P62900)
Brian R. Hamilton (P88135)
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7412
mhindelang@honigman.com
bhamilton@honigman.com

*Attorneys for CAL Realty, LLC*

Dated: August 17, 2026

By: */s/ Nathan D. Dupes* (with permission)
Nathan D. Dupes (P75454)
Sarah J. Gabis (P67722)
BODMAN PLC
1901 St. Antoine Street
Detroit, MI 48226-2336
(313) 393-7590
ndupes@bodmanlaw.com
sgabis@bodmanlaw.com

*Attorneys for Raeden Acquisitions, LLC*